Oral argument docket today is Oregon Natural Desert Association v. Brooks. Counsel for the appellant? Good morning, Your Honor. It's Damian Schiff for the appellants and permittees, Robert Brooks et al. With the court's permission, I'd like to reserve two minutes of my time for my defense. You may do so. Just watch the clock. Thank you, Your Honor. The permittees raise two basic issues on this appeal, both of which go to the very heart of their livelihoods. First of which is whether they may seek the court that contains a legal analysis of the Endangered Species Act that is directly adverse to the continued interest in their enjoyment in their permitting rights on the Malheur National Forest. And secondly, whether they may obtain intervention as of right to defend those same grazing permits in lawsuits that challenge the legality of those permits under the Endangered Species Act. Now, Onda contends that on both these issues the appeal is moot, but we argue that that is simply not the case, because on both points there is a continuing lie of controversy that would have a very real effect on the permittees going forward. With respect to the liability opinion, as we've already presented this Court with notices of supplemental authority, Onda has used that liability opinion to contend that the continued grazing on the Malheur National Forest is illegal. It has done that in its notice of warning sent to the services prior to its lawsuit that's currently ongoing in the District of Oregon. And it has used that opinion also in its briefing on the motion for preliminary injunction before Judge Hagerty, which was granted and which, in fact, has preliminarily enjoined grazing on two allotments in the Malheur National Forest. So we believe that the existence of this opinion has a very direct effect going forward on the permittees' rights to graze their cattle. With respect to intervention, the same thing is true going forward. If the permittees do not have a declaration from this Court that they may obtain the right of intervention to defend their grazing permits while the case is going on in the district court, they will never have that right. And they will be systematically deprived of judicial review of their right to intervene if this Court cannot hear it now. I wanted to ask some questions about the issue of whether this is a situation in which only the federal defendant rule should apply or not. And that is certainly the rule in NEPA cases. And we have no decision directly stating whether that's the rule in a Section 7 Endangered Species Act case. And I guess my first question is whether I correctly understand this to be a Section 7 case. Yes, Your Honor. It is a Section 7 case. Well, it seems to me that we have at least some hints in prior cases that Section 7 imposes obligations only on the government and not on private parties, and that private parties have rights under Section 10, but not necessarily Section 7. And we also have at least one case that says that Section 7a is just procedural in nature. And if those things are true, why isn't this a similar situation to the NEPA holdings? In response, Your Honor, I would first direct the Court's attention to another notice of supplemental authority that we submitted. Judge Ilston of the Northern District of California, her recent decision in Center for Biological Diversity v. Chemthorne, where she addressed this Court's jurisprudence under Kootenai Tribe and the None but the Federal Defendant Rule and concluded — excuse me — concluded that that jurisprudence does not apply to the Endangered  No, Your Honor. It's a Section 4 case. But if Section 7 is characterizable as applying only to the Federal defendants, I think you could also say that Section 4 is only characterizable as applying to Federal defendants. Nonetheless, Judge Ilston concluded that the None but the Federal Defendant Rule should not apply, at least where the gravamen of the argument is attacking the substantive obligations of the Federal agencies involved. On this lawsuit here — Let me just kind of follow up by asking whether there are any circuit-level opinions anywhere that you're aware of that deal with the question that I've just asked. With respect to — Whether the None but the Federal Defendant Rule should or should not apply to a challenge under Section 7 of the Endangered Species Act. Yes, Your Honor. Well, as a matter of fact, there are two circuit court cases, one from the Third Circuit, one from the Fifth Circuit, that have rejected the None but the Federal Defendant Rule, even in NEPA cases. The — I apologize. The exact titles of them escape me. We've cited them in our briefs. Perhaps in my rebuttal time, I will be able to find the titles. But that just creates a circuit conflict over the question of the None but the Federal Defendant Rule, and this panel is not going to vacate our Kootenai decision. We don't have the authority to do that. But I understand Judge Graber's question to be, does — what happens when we get to the Endangered Species Act, and specifically, is there anything in Section 7 that impacts your clients? Is there anything that your clients will be affected by under Section 7? Undoubtedly, Your Honor. If the biological opinions are overturned, our clients have no grazing rights. They cannot continue to graze their cattle on the Malheur. Their livelihoods are essentially over. Well, that's true in a NEPA case, too. The question is whether — in the — in the action itself, only the Federal Government has the obligation under Section 7. Only the Federal Government can fix something that's gone wrong under Section 7. So it may be — the question of intervention permissibly or intervention at a remedial stage is really a different question, I think, than the intervention as of right, as — as a defendant. You're right, Your Honor. Again, I would — I would draw the Court's attention to Judge Olson's opinion, where she says that in this lawsuit in which CBD challenges the service's threatened listing for the polar bear, I will allow these two Alaska private parties to intervene, even though under Section 4, the only person who's listing or not listing species is the Fish and Wildlife Service or the National Marine Fisheries Service, because the Court concluded that the economic interests of the private party Alaska groups were directly implicated by ONDA's — or, excuse me, by CBD's attack on the — the threatened listing of the polar bear. And the same thing is true analogously here, Your Honor, in that ONDA in this action intended that the continued allowance for grazing on the Malheur would jeopardize the continued existence of two listed species. If that is true, then grazing cannot happen, and the permits are essentially null and void. Therefore, that direct attack on the permittees' livelihood, we believe, justifies their intervention and also allows this Court to draw a legitimate distinction between the NEPA cases, where the only thing that's at issue is whether the Federal agency has adequately assessed the impacts of the action. NEPA imposes no substantive obligations. And in contrast to Section 7, which doesn't, in fact, impose a substantive obligation upon the relevant Federal agency, in this case, the — Substantive in what sense? In that Section 7 absolutely forbids Federal agencies from authorizing any activity that will jeopardize a listed species or adversely modify its critical habitat. It's not simply procedural. It is absolute. And therefore, if the — if the determination is made that the grazing will have that jeopardizing effect, the grazing cannot happen. It's really that simple. And therefore, we believe that this is not an appropriate place for the The — I noticed that under Section 7g allows a permit or license applicant to apply for an exemption. Does that apply here? Is that your client subject to that? In the abstract, yes, Your Honor, although that was not implicated in this case. Did your client apply for an exemption here under that section? Not to my knowledge, no, Your Honor. What — I guess I'm trying to harmonize all of our various views on this. cases, which is not an easy thing to do. But in Turtle Island Restoration Network, we held that Section 7a2 of the Environmental Species Act imposes a procedural duty on federal agencies. And it goes on to describe it. If there is a duty only on a federal agency and it's a procedural duty, I have difficulty understanding how any other party is a proper defendant, as distinct from intervention permissibly, which is a discretionary matter and it's a different issue. But on the main issue of intervention as a right as a defendant, I'm still struggling with how that would square with our holding in this other case. Your Honor, Section 7 has procedural and substantive components. The procedural component is the actual consultation obligation that before an action goes forward that may have an adverse effect on listed species or other critical habitat, the action agency has to consult with Fish and Wildlife Service or the National Marine Fisheries Service. And you characterize that as a substantive provision? No, I'm sorry, Your Honor. That's the procedural component. The substantive component is what I just mentioned a few minutes ago, which is the absolute prohibition on any federal agency from undertaking any action or authorizing any permit that will jeopardize a species' continued existence or adversely modify its critical habitat. Here, Onda contended that the authorization of grazing on these allotments on the Malheur would both jeopardize and adversely modify critical habitat. That means that there can be no grazing. That's true. And thus, the interests of the permittees were directly implicated. Now, it is true the Forest Service was not a defendant, but it seems to me to be a gross injustice to allow a party by artful feeding or by the selection of particular defendants to completely remove from the litigation parties who otherwise would have and still have a vital interest in how the case is going to be adjudicated. Now, Counsel, the district court did grant you permissive intervention, did it not? Correct, Your Honor, but only in the So isn't that enough to have your fundamental argument reviewed, which is to vacate the opinion as well as the judgment? Your Honor, we do certainly seek the vacator of both opinion and judgment, but the permissive intervention was limited to the remedial phase of the action, and the remedial phase never occurred. Everything that happened in the district court was on the merits, and therefore, technically, the permittees had no right to speak on any issue. It is true that we were granted amicus status, but even on that, obviously, there is a profound procedural distinction between amicus participation and whole-party participation. And so we do not believe that what the district court granted us is sufficient for our redress. You're down to about two-and-three-quarter minutes. If I can reserve the balance for a moment. You certainly may. Thank you, Your Honor. Good morning, Your Honors. I'm Kristen Ruther for Apelli's Oregon Natural Desert Association at all. Would you mind moving the microphone a little closer? That's good. That's better. I was afraid it would be too loud. I'll start with the intervention issue. This intervention issue is moot for three primary reasons. First, there is no effective relief available. Second, there is no live controversy. And third, there are no collateral consequences from the intervention order. Well, wait a minute. On the collateral consequences, you heard counsel that the opinion, not the judgment, but the opinion is being used offensively counter to the interests of his client. Yes, but he was talking about the merits opinion, not the intervention order. There are two separate orders challenged in this appeal, the intervention order and the merits order. Well, the merits order is really the center of this case, is it not? Isn't that the primary goal of the appellant? No, I don't think it is. I think they have two quite distinct claims. The bulk of their briefs is all talking about how the intervention order was improper. And that's the issue that I'm talking about. The reason that they're arguing that the intervention order is improper is so that they have standing then to ask this court to vacate the district court's opinion. No, I think that's separate. I think even if, I think regardless of the intervention order, they could ask the court to vacate it. Because they had standing when they were granted permissive intervention on the remedies phase. But the case is moved. What can they possibly gain by having intervention as a right at this stage? Well, I absolutely agree with you. I don't think they can gain anything. But they're asking for remedies. But do you also agree that since they were given permissive intervention, they do have standing to pursue their claim that the order, that the opinion should also be vacated in light of the order? Yes, I believe they have the right to ask that. Because the Churchill County case says that a permissive intervener, or an intervener on the remedies has the right to challenge the final judgment. So we don't dispute their right. Why don't we get to the vacation, the vacator issue. Okay. Why do you resist the vacator of the opinion? It seems so traditional with the U.S. Bank Corp. and the guidance we get from the Supreme Court of the United States that once the case is moot, it's moot for all purposes. Presumably, moots the opinion as well. Yes, I think it's a two-pronged test here in the Ninth Circuit. The first question, the threshold question, is what party caused the mooting event? And of course, if it's caused by happenstance, then yes, it is generally accepted that it should be mooted. But if the mooting event was caused by the losing party, then a vacator is not appropriate. Because as the U.S. Bank Corp. case discussed, it's basically not fair for the losing party to collaterally attack the case by mooting it out on purpose, and then not getting to take it on the bill. But here, the government advised the district court that there was no reason to go down the road of capable of repetition yet evading review because it was going to issue a five-year bio-op. And thus, there would be ample opportunity. And it turns out that it was within a matter of weeks, this was not years, it was within a matter of weeks, it issued a five-year bio-op. And so, it's not exactly like the government caused the event. Usually, we're talking about people who engage in sort of a little self-help to try and moot a case. Here, the government told the district court exactly what it intended to do, and then it did it. That is true. That's not exactly the causing of the event. That is what the district court found. He found that the duration, two things that the federal defendants did made it a voluntary action. One was the length of the biological opinion, and also he found that the timing of the biological opinion just made it seem that it was not happenstance. That's what he said in the telephone argument that's in the excerpts of record. And I'll also just notice that the permittees have not argued that he abused his discretion on the vacatur. If I may, I'd like to just turn back to the intervention. Well, one other aspect of that, the suggestions made that the association and, excuse me, that Mr. Schiff's client and the government were on the same side or their interests were mutual so that the government's conduct also impacted them. Do you, is it fair to say that their interests were truly aligned? I think it is fair to say that in the liability phase, which is the only phase that this question of their identical interests is at issue. In the liability phase, they were both asking for the upholding of the biological opinions. And at that point, it's true they might have diverged at the remedies phase, but the permittees were granted full intervention in that phase. So I think it's pretty clear that they had the same interest in the liability phase. As to the relief available for this intervention challenge, there simply is none. Permittees ask for a remand of the intervention order. And this just makes no sense when the district court case has already been dismissed as moot. This court has already held in United States v. Ford and several times since that an appeal of an intervention order is moot and fruitless, where there is no longer any case below in which to intervene. And that case is squarely on point, and the permittees even admitted this in a brief in their first appeal of this intervention order. And they also... Let me ask you, why does your client resist the vacator of the opinion? You know, to be honest, I don't feel tremendously strong about it. But the fact is that vacator gives a taste. Maybe we can have a resolution of this case right now. If you have no objection, this can be accomplished in an order. You know, I think the NASD case had a really interesting discussion of vacator. And they have a paragraph where they said, you know, when we vacate a case, it's still citable for its persuasive value, and it's not ripped from the federal supplement. And that's the same value that the district court case had to start with. So it's kind of a funny circular argument that, you know, well, after it's vacated, you can still cite it for its persuasive value. And that's what it was citable for in the first place. Well, that may not necessarily be true within the same district. If another case comes up in the same district, certainly, it would seem to me, your client would argue that that case now is precedent and binding with respect to a similar case in the same district. Oh, no, I don't think we could ever argue that the intervention order is binding. No, no, I'm not talking about the intervention order. I'm talking about the opinion. I don't think we could ever argue that was binding either. It was a fact-specific challenge to the 2006 biological opinion. And those facts will never be the same. And they make a lot of light about how, you know, we cited to it in our briefs in the follow-up Kimball case, but the fact is, it was pretty minimal citation. And if you look at the preliminary injunction that Judge Haggerty entered in this new case, he cites it once in the facts section just to say that it occurred. He doesn't find that it was preclusive. He doesn't even really cite it extensively for its persuasive value. I'd just like to touch on one more very important issue as to why this intervention issue lacks jurisdiction. And that's because there's no live controversy. And the permittees essentially admit this in the reply brief. They try to say that there is a live controversy, but the controversy they identify was very telling. They said that the controversy for the intervention order is, quote, the district court's refusal to vacate its original liability opinion, unquote. And that's their reply brief at 7. In other words, they have to reach to the other issue in this case, vacature, to try to gin up a live controversy for the intervention issue. And that is an admission that they have no live controversy for the intervention. It's completely the opposite way. I'd understood that what they were trying to do was to get, was to accomplish vacature of the district court's opinion. And in order to do that, they felt that they had to establish their right to intervene in the case, to establish their standing. I don't, I don't think that's the case. I think the Churchill County case is very clear. I think that the ultimate goal here really is that, that the intervention is really what's driving all of this, not the vacature of the opinion. I do, absolutely. So you wouldn't have any objection then to vacating the opinion? You know, I'd rather you didn't because it adds a, it adds a taint. And I think that the federal governments did move the case by their voluntary action. But I think it's fair if you decide that you do need to vacate it. Let, let me, let me see if I have, this is kind of probably repetitive, but I need to ask it so that I am clear that I understand your position. If we were to hold that the entire issue of intervention as of right in the liability phase is moot or is otherwise not properly before us, is it your position that we still have a live appeal on the vacature issue because in fact they are intervenors permissibly in the remedy phase anyway? Yes, I do. There's a lot of cases. We wouldn't even have to reach it for, we could, we could decide, if I understand your position, we could decide the vacature issue either up or down, either way, and then not even reach the intervention issues because that's the only thing they see is the thing we could do anyway. Well, they also ask for the remand of the intervention order and a declaratory, they seek an advisory declaratory opinion on their intervention rights, and that's what I think you can't reach. I do think you can reach the vacature issue. Well, assume they prevailed on that point. What can they do with it? Well, yes, they, they, they are quite clear as to what the redress they want in this appeal. They say that they want the redress to be, quote, a precedential and citable opinion guaranteeing their intervention in future challenges to grazing, unquote, which to me tells me that they're asking for an advisory opinion. The only harm they have identified on this intervention issue is sheer speculation that another court in some theoretical case that's not even yet filed might find the unpublished district court intervention order persuasive and prevent them from intervening in a case someday. It's really untethered to any site-specific injury, and that's why that intervention issue is moot and declaratory relief wouldn't be available. And just to finish up on the issue of a live controversy, the Supreme Court discussed this issue in the U.S. Bank Corp case. That's a case that became moot on appeal, and the court had to decide the question of whether they could decide the vacature issue. One of the parties said, well, because the case is moot, you can't decide vacature. And Justice Scalia said that, no, we can decide vacature, and he explained the nature of vacature, that the courts have the power through a statute to vacate, and it's just a way to dispose of a case. It's ancillary to the decision-making power of the court. And so he did decide vacature, but I'd just like to emphasize the court did not find that that gave them the jurisdiction to decide the merits of the moot case, which is what the permittees are asking here. They're asking the presence of the vacature issue that's live to bestow jurisdiction onto this very moot intervention issue, and that is not proper. And also the same thing occurred in the NASD case. That was a case that had become moot on appeal. The court decided the vacature issue, but they did not find that that bestowed jurisdiction on the merits of the moot case. And finally, I'll just briefly touch upon the argument that Mr. Schiff just made as to, it's kind of a parade of horribles type argument that if this case is declared as moot, they'll never be able to challenge partial intervention denials. And that's incorrect, both factually and legally. It's factually incorrect because it ignores the fact that Onda's mootness argument here is based on the district court case now being moot. And that's a relatively unusual fact. It only happened here because Onda was challenging a one-year action, less than one-year action, so the district court case became moot. That doesn't happen very often, so there's no evidence to suggest that partial intervention denials are always going to be denied review. It only happened here because the district court case became moot quite quickly. And it's legally incorrect because it's inconsistent with the cases holding that partial intervention orders are not immediately appealable. He said something when he was just up here. He said, if we can't decide about this partial intervention issue while the case is going on, we're not going to get good relief. And the Stringfellow case from the Supreme Court already decided this. And they said that parties seeking relief from partial intervention denials have to wait until the end of the case. And they get effective relief at that time. They said they get effective relief because at that time, the appeals court considers two things. They consider, first, whether the intervention order was erroneous, and second, whether more participation would have affected the final outcome of the case. So the argument he just made was saying that it's not fair that he has to wait until the end of the case, but the Stringfellow case absolutely decided that already. If there are no further questions. No questions. Thank you, counsel. Thank you very much. Mr. Schiff, you have some reserved time. Let me ask, you've heard counsel who indicates she's not particularly concerned about the vacating of the opinion, but the real target in this case is you're getting an advisory opinion on intervention as of right. What's your response to that? We raise both issues, and I would respectfully characterize our goal as not an advisory opinion. The difficulty is that partial intervention orders, as this court has already held, are not immediately appealable, meaning that if a party wishes to contend that he should have been given full intervention, he has to wait until the end of the judgment in the district court. This court has also ruled that by the time a final judgment is entered, that partial intervener is considered the full party for purposes of appeal. Now, Onda contends that the case is moved on the intervention issue because there's no more relief that this court can give since the underlying action is complete, since there's nothing more to intervene in. The difficulty is by virtue of this partial intervention dynamic, that will always be the case. No, no. I didn't understand their argument to be that at all, not that the district court case is complete because that's a sine qua non of any appeal is that it's complete. I understood their argument to be that it was two things. It was complete and it was moot, and that it was the mootness, not the completeness, that was the problem. Your Honor, I believe they make both arguments. With respect to the mootness argument, though, we don't believe that the case is moot because of the vacator issue. And that's what distinguishes this case from the Ford and the Paulson case. If we were to order the vacature of the district court's opinion, then do you have any – is there anything left for us to do? Well, that raises perhaps a nice metaphysical argument. I think that there would be in that – That's why I asked. Thank you, Your Honor. I think there would be because in a sense, this case is live now. The case is live until judgment from this Court is entered on the appeal. I think that it would be a rather crabbish interpretation of this Court's review of appellate power to say that – If we were to decide the intervention issue, then don't you just have to go back to the district court and argue on the vacature? And then it could be back up to this Court, right? If we decide the vacature issue, then it might – then it ought to moot the intervention question because there's nothing for you to go back to the district court on. Let me just modify it just slightly. If you got that result, what would you do back in district court? If we received an order favorable to the – on the vacator issue but not on the – not address the – No, no. Assuming you got a favorable order on the intervention as a right, as a favorite ruling out of this Court, what would you do with it? We would use it going forward as precedent for – Going forward when? In this case? There's nothing in this case left. But, Your Honor, as I – as I had mentioned previously, that is going to be repeatedly the case. But that's an – that's an – but that's an advisory opinion. It's a pure advisory opinion. Your Honor, I would submit, though, that in this instance, this would be the – the classic example of where the capable repetition of the Bating Review doctrine should apply. I mean, I think one can say that – that that doctrine essentially says there is a small subset of – Let's – let's suppose that we – It would have to be all the same parties, though, for that even to apply. Right. And that's what makes it so speculative. If – if we decided only the intervention question, we decided it in your favor, what would you do with it? You'd go back to the district court, beat the district court over the head with it, and ask for vacature of the – of the underlying opinion, right? If this Court were not to address both issues in this field, yes, we would do that. Okay. And if we addressed – if we addressed the vacature, then there's no reason for you to go back to the district court on – on anything. That is correct, because we would hope that this Court would also address the intervention issue. Okay. If we addressed both of them, there's nothing – there's still nothing for you – for you to do in the district court. That is certainly the case. Okay. And that – and that makes the intervention question absolutely and utterly advisory. Well, I would respectfully disagree, Your Honor, but I see that my – my time is up. Saved by the bell. Thank you, Your Honor. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, Bybee